UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEAN REGIS and VERLANDE REGIS, on their own behalf and on behalf of their minor children, M, J, and H, | ) ) ) ) ) |
| Plaintiffs, | ) Civil Action No. ) |
| v. | ) ) **COMPLAINT** |
| WILLIAM GROSS, WILLIAM FEENEY, MATTHEW PIEROWAY, JOHN DOES 1-10, and THE CITY OF BOSTON, | ) ) ) ) |
| Defendants. | ) ) |

## **INTRODUCTION**

Plaintiffs Jean and Verlande Regis, on their own behalf and on behalf of their minor children, M, J, and H, by and through their undersigned counsel, respectfully file this action against defendants William Gross, William Feeney, Matthew Pieroway, John Does 1 through 10, and the City of Boston. Plaintiffs allege as follows:

1. In the early morning of November 27, 2018, defendants William Feeney, Matthew Pieroway, and other officers of the Boston Police Department forcibly entered the Regis family's home using a battering ram; forced family members to the floor at gunpoint; and handcuffed Jean and Verlande Regis, and their minor daughter M, all in front of their two youngest children, J and H. City police officials later admitted that there was no lawful basis for the entry into the Regis home.

## JURISDICTION

2.	This action includes claims under 42 U.S.C. § 1983 and § 1988, and the Fourth and Fourteenth Amendments to the United Constitution. This Court thus has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over the claims for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

3.	Plaintiffs Jean and Verlande Regis are individuals who, at all times relevant to this complaint, were residents of Suffolk County, Massachusetts.

4.	M, J, and H are minors, represented here by Jean and Verlande, their parents.

5.	William Gross is the Commissioner of the Police Department of the City of Boston. He is responsible for all operations of the Boston Police Department. He is sued in his official capacity.

6.	On information and belief, defendant Feeney was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

7.	On information and belief, defendant Pieroway was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

8.	On information and belief, defendants John Does 1-10 were at all times relevant to this complaint duly appointed police officers of the City of Boston Police Department. Their

actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. They are sued in their respective individual capacities. Fictitious names are used for purposes of this complaint as the plaintiffs do not yet know the identities of these defendants, but expect to learn them through discovery in this action.

9. Defendant City of Boston is a duly organized municipal corporation under the laws of the Commonwealth of Massachusetts.

## FACTS

10. On November 27, 2018, Jean and Verlande were living at 41 Faneuil St., Apartment 138 in Brighton, with their three minor children M (age 15), J (age 5), and H (age 4). 41 Faneuil St. is a multi-unit apartment building.

11. Around 4:30 am on that day, while the family was sleeping, a Drug Control Unit, under the supervision of defendant Feeney, arrived at 41 Faneuil St. to execute a warrant for a different apartment within the building.

12. The Regis family was awakened by a loud crashing noise caused by the defendant officers breaking down the front door to their apartment with a battering ram. The officers did not knock and announce their presence and purpose prior to breaking open the Regis family's door and raiding their home.

13. From the standpoint of a reasonable officer, no circumstances existed that rendered announcement unreasonable or a threat to officer safety.

14. Approximately 10 to 12 officers forced their way into the Regis family's apartment, using force and without consent. The officers began raiding every room in the apartment, including closets.

15. Verlande leapt from her bed upon hearing the crash from the door being forcibly broken down. Upon entering the apartment, the officers pointed a firearm at Verlande, and pushed her to the ground and handcuffed her as she lay partly in the apartment's hallway and partly in the bedroom.

16. An officer then pointed a firearm at Jean as he lay in bed, ordered him out of bed, pressed him against the wall with his hands behind his back, and handcuffed him. Jean asked why he was being handcuffed, and the officer told Jean that there was a warrant to search his apartment. This explanation was false.

17. Meanwhile, M woke when she heard Verlande scream. M attempted to open her bedroom door and enter the hallway, but was immediately shoved back into her room by an officer wielding his shield and using it to push her back.

18. The officer aimed his drawn gun at M. The officer ordered M to the floor and to put her hands behind her back. M complied immediately. M told the officer handcuffing her that she did not know what was going on and that she was only 15 years old. The officer nonetheless kept her in handcuffs on the floor.

19. Jean, Verlande, and M were kept in handcuffs for approximately 20 minutes. Jean and Verlande were restrained and handcuffed in front of their youngest two children, J and H, who had been sleeping in their parents' bed and thus were present in their parents' bedroom when the police raided the apartment.

20. The force used by the officers, including forcing Verlande to the ground; shoving M; pointing firearms at the family members; forcing Jean against a wall; and handcuffing Jean, Verlande, and M, was objectively unreasonable, particularly given that there was no warrant authorizing entry to the apartment and that no member of the family in any way resisted the

4

officers' initial show of force. The entry and force used were also unreasonable because, upon information and belief, including later statements by some of the police officers, the officers had been given a key to the correct apartment, but, when it did not work on the Regis family's door, they did not re-evaluate whether they were at the correct apartment, but instead broke down the door using the battering ram.

21. The officers entered every room in the apartment, ransacking closets and searching the entire apartment.

22. After approximately 20 minutes, one of the officers, on information and belief defendant Feeney, told the family and the other officers that they had entered the wrong apartment. On information and belief, including the existence of Boston Police Department rules that require proper identification of the premises to be searched, and statements made by police officers to members of the Regis family, the search warrant possessed by the officers listed a different apartment number than the number on the Regis family's apartment.

23. The apartments in the building were clearly and obviously labeled with apartment numbers on the outside of the apartment doors. In addition, one officer told Jean that the team was given instructions to enter the first apartment on the *right* when entering the floor, consistent with Boston Police Department rules that require entry personnel to be directed to the particular unit to be entered and searched in a multi-unit dwelling. The Regis family's apartment, however, was the first apartment on the *left*.

24. The defendants' conduct violated the Regis family's clearly established rights, including rights protected by the Fourth and Fourteenth Amendments to the Constitution of the United States.

25. The defendants made a warrantless no-knock entry into the Regis family's apartment and failed to take reasonable precautions to avoid violating the Regis family's rights, such as following the directions provided to them for locating the correct apartment, reading the number on the Regis family's apartment door, or double-checking that they had the right apartment before using a battering ram when the key they were provided did not work. Each of the officers present failed to prevent the other officers from taking the actions described herein, despite knowing, or having reason to know, that the officers were violating the Regis family's constitutional rights.

26. The Boston Police Department, through its Commissioner William Gross, has admitted that the officers had no lawful basis for entering the Regis family's home.

27. As a result of the defendants' actions, the plaintiffs have suffered harm. The plaintiffs are being treated for trauma from this incident. M has missed school as a result of her trauma. Verlande has missed work. Verlande and M have suffered headaches from the distress that defendants' actions caused. J and H continue to ask their parents if the police are coming to get them and if their parents are "bad guys," and frequently hide under the bed "from the police." Jean and Verlande have suffered from paranoia as a result of the raid. All family members suffer from anxiety due to the incident, and all family members are now scared of interactions with the police.

28. On December 27, 2018, plaintiffs, through counsel, sent a public records request to the City of Boston's Police Department asking for records showing, among other things, training provided to police officers with regard to the execution of no-knock warrants. After no response was received within the 10 business days required by M.G.L. c. 66, § 10, counsel for plaintiffs filed an appeal to the Supervisor of Public Records within the Secretary of the

Commonwealth's office. On February 22, 2019, the Supervisor of Records issued a ruling that the City had failed to comply with the public records law and ordered that a response be provided within another 10 business days. The City failed to comply within the required 10 days, or since.

29. The City of Boston and its Police Commissioner are aware that officers sometimes make entry into housing units that are not the units for which a search is authorized by the warrant. Indeed, defendant Gross told the Regis family that entries into the wrong homes have happened in the past and that one victim suffered a heart attack as a result. Moreover, Rule 334 of the Boston Police Department's own Rules and Procedures states that "In the unlikely event that the supervisor determines that the wrong premises have been entered, the search shall immediately terminate." However, in spite of this awareness, the Rule contains no guidance to entering officers to ensure that the wrong premises are *not* entered in the first place, other than the requirement that "the affiant police officer shall point out to entry personnel the particular unit to be entered and searched." Nowhere in the search warrant execution procedures in Rule 334 is there even any reminder, for example, to double check and compare the address on the warrant to the address of the housing unit before forcibly entering with a battering ram while the residents are likely sleeping. This failure to train constitutes deliberate indifference.

## CAUSES OF ACTION

### COUNT I - 42 U.S.C. §§ 1983 and 1988
(Against Defendants Feeney, Pieroway, and Does)

30. Plaintiffs repeat and re-allege paragraphs 1- 29 of this complaint.

31. The actions of defendants, taken under color of state law, violated plaintiffs' rights to be free from unreasonable intrusions into their home, unreasonable seizures, and

unreasonable and excessive force, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

32. As a result of the above-described violations of their rights, plaintiffs suffered harm.

## COUNT II - 42 U.S.C. §§ 1983 and 1988
(Against the City of Boston and Defendant Gross)

33. Plaintiffs repeat and re-allege paragraphs 1- 32 of this complaint.

34. On information and belief, including the City of Boston's inability to provide information about appropriate training and supervision despite repeated requests from the Regis family and an order by the Office of the Secretary of the Commonwealth, the City of Boston did not require or provide appropriate supervision and training of its officers to avoid the types of constitutional violations inflicted on the Regis family.

35. The deliberate indifference on the part of City policymakers led to the failure to properly supervise and train the officers involved, and thus were the cause of the violations of plaintiffs' rights alleged herein.

36. As a result of the above-described violations of their rights, plaintiffs suffered harm.

## COUNT III - VIOLATION OF M.G.L. c. 12, §§ 11H and 11I
(Against all Defendants)

37. Plaintiffs repeat and re-allege paragraphs 1- 36 of this complaint.

38. The actions of defendants constituted threats, intimidation, or coercion that interfered with plaintiffs' exercise and enjoyment of rights secured by the Constitutions and laws of the United States and the Commonwealth of Massachusetts, including but not limited to the

rights secured by the Fourth and Fourteenth Amendments to the United States Constitution and Article XIV of the Declaration of Rights of the Massachusetts Constitution.

39. As a result of the above-described violations of their rights, plaintiffs suffered harm.

### COUNT IV – VIOLATION OF M.G.L. c. 66, § 10A
(Against the City of Boston)

40. Plaintiffs repeat and re-allege paragraphs 1 - 39 of this complaint.

41. Defendant City of Boston has failed to comply with its obligations under the Massachusetts Public Records Law, G.L. c. 66, § 10.

### COUNT V - ASSAULT AND BATTERY
(Against Defendants Feeney, Pieroway, and Does)

42. Plaintiffs repeat and re-allege paragraphs 1- 41 of this complaint.

43. The actions of the individual defendants constituted an assault and battery.

44. As a result of the assault and battery, plaintiffs suffered harm.

### COUNT VI - FALSE ARREST AND IMPRISONMENT
(Against Defendants Feeney, Pieroway, and Does)

45. Plaintiffs repeat and re-allege paragraphs 1- 44 of this complaint.

46. The actions by defendants constituted a false arrest and false imprisonment.

47. As a result of the false arrest and imprisonment, plaintiffs suffered harm.

### PRAYERS FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request entry of judgment in their favor and against the defendants, containing the following relief:

A. Awarding plaintiffs compensatory damages;

B. Awarding plaintiffs punitive damages;

C. Issuing an injunction prohibiting the City, the Commissioner, and Boston Police officers from engaging in the unlawful behavior described herein and requiring the City and the Commissioner to adopt policies to reduce the likelihood that such unlawful behavior will happen again;

D. Declaring that the City of Boston and the Commissioner have failed to take appropriate steps to ensure that Boston Police officers, in executing a search warrant, do not enter the wrong housing unit;

E. Awarding plaintiffs the costs of this action, including reasonable attorneys' fees;

F. Awarding plaintiffs pre- and post-judgment interest as permitted by law; and

G. Awarding such other further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

A trial by jury is hereby demanded on all claims.

March 20, 2019

Respectfully submitted,

JEAN REGIS and
VERLANDE REGIS,

By their attorneys,
/s/ Joshua L. Solomon
Joshua L. Solomon (BBO #657761 )
POLLACK SOLOMON DUFFY LLP
101 Huntington Avenue, Suite 530
Boston MA 02199
Tel:(617) 439-9800
jsolomon@psdfirm.com

Ruth Bourquin (BBO #552985 )
American Civil Liberties Union Foundation of Massachusetts, Inc.
211 Congress Street
Boston MA 02110
Tel: (617) 482-3170
rbourquin@aclum.org