UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-10527-IT

JEAN REGIS and VERLANDE REGIS,
on their own behalf and on behalf of their
minor children, M, J, and H,
                              Plaintiffs,
v.

WILLIAM GROSS, WILLIAM FEENEY,
MATTHEW PIEROWAY, JOHN DOES
1-10, and THE CITY OF BOSTON,
                              Defendants.

**DEFENDANTS CITY OF BOSTON AND WILLIAM GROSS'S  MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS II, III, AND IV OF PLAINTIFFS' AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

**I.   INTRODUCTION**

Defendants City of Boston ("City") and William Gross, who is the Commissioner of the Boston Police Department ("Commissioner Gross") (collectively "City Defendants"),[1] move this Honorable Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts II, III, and IV brought against them by Plaintiffs, Jean Regis and Verlande Regis, on their own behalf and on behalf of their minor children, M, J, and H ("Plaintiffs") in their Amended Complaint (ECF 20).  Under Count II, Plaintiffs allege that the City Defendants failed to properly train or supervise Boston police officers, causing a group of those officers ("Defendant Officers") to accidentally execute a search warrant at the wrong apartment and to use excessive force in violation of Plaintiffs'

---

[1] Commissioner Gross is sued in his official capacity only.  Suing a municipal employee in his official capacity is the legal equivalent to suing the municipal employer; accordingly, the claims against the City Defendants are one and the same.  Dirrane v. Brookline Police Dep't, 315 F.3d 65, 71 (1st Cir. 2002).

constitutional rights as protected by 42 U.S.C. § 1983. Under Count III, Plaintiffs allege that the City Defendants violated the Massachusetts Civil Rights Act ("MCRA"). Under Count IV, Plaintiffs allege that the City failed to respond timely or in full to Plaintiffs' request for public-records under Mass. Gen. Laws ch. 66, § 10A. (Plaintiff's Amended Complaint filed May 23, 2019 ("ECF 20").)

As further provided below, Plaintiffs fail to bring sufficient allegations to support Counts II, III, or IV. For Count II, Plaintiffs fail to explain their contention that supervision or training was lacking, and in fact quote a City policy showing that the City had a robust protocol in place that is consistent with the law regarding execution of search warrants. Count III fails because a municipality is not a "person" within the meaning of the MCRA. Finally, Plaintiffs' public-records-request claim is moot.

## II.   FACTUAL ALLEGATIONS[2]

Plaintiffs allege that on November 27, 2018, at approximately 4:30 a.m., officers in the Drug Control Unit of the Boston Police Department ("BPD") were attempting to execute a "no-knock" search warrant for 41 Faneuil Street, Apartment 139, but accidentally entered and did an initial sweep of Plaintiffs' apartment, which was Apartment 138. (ECF 20, ¶¶ 10-13.) Plaintiffs allege that they were awakened when a SWAT team entered their apartment using a battering ram, and that the police did not knock or announce beforehand. (Id. at 12.) Plaintiffs allege that three of them – Jean, Verlande, and M – were then placed and kept in handcuffs for approximately twenty minutes while officers searched their apartment. (Id. at 14, 15, 18, and 19.) After twenty minutes the officers told the family that it appeared they were in the wrong apartment. (Id. at 22.) Plaintiffs claim that they complied with all officer instructions and were

---

[2] The City Defendants present the facts alleged in Plaintiffs' Amended Complaint, and assumes them as true solely for purposes of this motion.

at times unnecessarily shoved and/or stepped on, and that officers made comments about putting the children in foster care. (Id. at 16-20.) Plaintiffs allege that as a result of this incident they have suffered emotional trauma and distress, and that Verlande suffered a hand injury. (Id. at 29.)

Plaintiffs, who refer to details from the warrant records in the Amended Complaint, provide no allegations regarding the basis for the warrant, nor do they challenge its validity.[3] (See id. at 22.) As shown on the warrant application, the target was a suspected fentanyl dealer with a history of illegal weapons possession. (See warrant records, attached hereto as Exhibit A, affidavit pp. 2-3.)[4] The officers further expected to find nonresidents in the apartment, some of whom could be buyers and/or sellers of fentanyl. (Id. at affidavit and warrant pages.) According to the reports, the warrant was executed at Apartment 139 immediately after the officers left Plaintiffs' apartment, at approximately 5:00 a.m., and during that search the officers found drug-selling paraphernalia. (Id. at warrant return page.)

According to the Amended Complaint, BPD's rule regarding execution of search warrants, Rule 334, provides that "'the affiant police officer shall point out to entry personnel the particular unit to be entered and searched'" and that "'[i]n the unlikely event that the supervisor determines that the wrong premises have been entered, the search shall immediately terminate.'" (ECF 20, ¶ 33.) Rule 334 further provides extensive guidance for how officers are required to

---

[3] Plaintiffs inexplicably allege, without discussing the warrant itself, that "[f]rom the standpoint of a reasonable officer, no circumstances existed that rendered announcement unreasonable or a threat to officer safety or that justified use of the S.W.A.T. team." (ECF 20, ¶ 23.)

[4] "In evaluating a motion to dismiss, the Court may consider documents pertinent to the action and/or referenced in the complaint." In re Polaroid Corp. Sec. Litig., 134 F. Supp. 2d 176, 182 (D. Mass. 2001). Here, the no-knock warrant in question is highly relevant to Plaintiffs' claims but is also not being challenged, and the Amended Complaint refers to several elements of the warrant and its related records.

plan, prepare, and execute search warrants, including a detailed pre-search briefing with all officers involved with a description of the target location. (See BPD Rule 334, attached hereto as Exhibit B, § 3.)[5] Rule 334 also requires that a SWAT team be utilized whenever the presence of weapons is suspected. (Id. at 3(1)(A).) Plaintiffs fault the rule for not requiring officers to double check the unit number or to compare names or physical descriptions of occupants with those of the warrant target name(s). (ECF 20, ¶ 34.) Plaintiffs claim that the City also has adopted a policy of not permitting the affiant officer to be present at the entry when SWAT teams are used. (ECF 20. ¶ 33.) Rule 334 explicitly requires the affiant officer to be involved in the pre-search briefing. (Exhibit B, § 3(2).)

Plaintiffs do not allege that Commissioner Gross or any other high-ranking City official was involved in the events of November 27, 2018. Plaintiffs allege that at some point Commissioner Gross "told the Regis family that entries into the wrong homes have happened in the past and that one victim[, Reverend Accelyne Williams,] suffered a heart attack as a result." (ECF 20, ¶ 32.) As is well known and documented, Reverend Williams died after suffering a heart attack during a Boston police raid in 1994. (See "Inquest Sought in Raid Death of Minister," Boston Globe, April 8, 1994, and "Police Unveil New Warrant Policy in Response to Botched Raid," Boston Globe, Jan. 1, 1995, attached hereto as Exhibit C.) In that case, though, the officers went to the address listed on the warrant. (Id.) It was the warrant itself, not the execution, that was faulty due to incorrect information provided by a confidential informant. (Id.) Plaintiffs claim that "[s]imilar raids of the wrong home have occurred throughout the

---

[5] As noted in infra, the inclusion of Rule 334 does not convert the present motion into a motion for summary judgment because Plaintiffs refer to and quote from it in the Complaint. See Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (noting that on motion to dismiss court can consider "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice").

country and have been widely publicized," but do not identify any such instances, in Boston other elsewhere, or provide further detail about the circumstances surrounding those purported instances. (ECF 20. ¶ 32.)

Finally, Plaintiffs allege that they requested from the City public records related to the execution of this and other no-knock warrants, to which the City belatedly replied. (Id. at 30-31; see also Plaintiffs' requests and the City's response, attached hereto as Exhibit D and Exhibit E.) The City responded to each request to the extent such records were in its possession or control, apart from exempt internal-affairs records. (Exhibit E.) Nonetheless, Plaintiffs claim that the City's response omitted two types of records. (ECF 20, ¶ 31.) First, Plaintiffs claim that "at least one officer involved in the raid was equipped with a camera" and that the City failed to provide the footage in its response. (Id. at 51.) Second, Plaintiffs claim that the City failed to include reports of the raid that led to Reverend Williams's death in 1994, despite the fact that they requested records only from "the past 24 months." (Id. (emphasis added); Exhibit E, requests no. 4 and 7.)

### III.   PROCEDURAL HISTORY

Plaintiffs filed this action on March 20, 2019. The City Defendants moved to dismiss Counts II, III, and IV on May 3, 2019 (ECF 16 and 17), and on May 23, 2019, Plaintiffs filed the Amended Complaint (ECF 20). Like in the original complaint, Plaintiffs in the Amended Complaint bring a total of six counts against the defendants in various iterations. As against the Defendant Officers only, Plaintiffs have brought claims under 42 U.S.C. § 1983 alleging violation of their rights "to be free from unreasonable intrusions into their home, unreasonable seizures, and unreasonable and excessive force, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution" (Count I), as well as common-law tort claims of assault and battery (Count V) and false imprisonment (Count VI). (ECF 20, ¶¶ 40, 54, and 57.)

As against the City Defendants only, Plaintiffs have brought claims under 42 U.S.C. § 1983 alleging that they caused the Defendant Officers' violations alleged under Count I through inadequate policies, training, and supervision (Count II). (Id. at 43-45.) As against all of the defendants, Plaintiffs allege that the defendants violated Mass. Gen. Laws ch. 12, §§ 11H and 11I, by engaging in "threats, intimidation, or coercion that interfered with plaintiffs' exercise and enjoyment of rights secured by the Constitutions and laws of the United States and the Commonwealth of Massachusetts, including but not limited to the rights secured by the Fourth and Fourteenth Amendments to the United States Constitution and Article XIV of the Declaration of Rights of the Massachusetts Constitution" (Count III). (Id. at 48.) Finally, Plaintiffs claim that the City failed to comply with the Massachusetts public-records law, Mass. Gen. Laws ch. 66, § l0A (Count IV). (Id. at 51-52.)

The City Defendants in the present motion are moving to dismiss Counts II, III, and IV.

**IV.   ARGUMENT**

    A.    <u>Standard of Review on Motion to Dismiss</u>

A complaint or count therein must be dismissed where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court is obliged to accept the plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor, but excluding conclusory allegations. Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). The court can also "augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011). To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Evaluating the plausibility of a pleaded scenario is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Haley, 657 F.3d at 52–53 (quoting Iqbal, 556 U.S. at 679).

### B. Count II – Plaintiffs Have Not Alleged Deliberate Indifference for which the City Defendants Could be Liable

Plaintiffs fail to allege viable constitutional claims against the City Defendants, both with regard to the mistaken entry as well as the level of force used. Municipalities are not liable under Section 1983 for the actions of their employees under principles of *respondeat superior*; rather, only those acts that constitute execution of a "policy or custom" may form the basis of a claim against a municipality. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Under only very limited circumstances may inadequate training form the basis for municipal liability under Section 1983. City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). Specifically, a plaintiff must show that the government's failure to train rose to the level of "deliberate indifference." Saldivar v. Racine, 818 F.3d 14, 20 (1st Cir. 2016). The "deliberate indifference" standard "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (internal quotations omitted). A plaintiff must also show a "direct causal link" between the policy, or failure to train, and the harm in question. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 404 (1997). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61.

Accordingly, a showing of "deliberate indifference" typically requires showing "a pattern of similar constitutional violations," or circumstances in which the "need for more or different training is so obvious and the inadequacy is so likely to result in the violation of constitutional rights." Hill v. Walsh, 884 F.3d 16, 24 (1st Cir. 2018) (internal quotations and citations omitted); see also Harris, 489 U.S. at 390; Connick, 563 U.S. at 64. "It is not enough to show that the [municipality's] training regimen was faulty; [a plaintiff] must also show that the [municipality] knew or had reason to believe that such a regimen had unconstitutional effects." Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019).

For example, in Bochart v. City of Lowell, the plaintiff brought a 1983 claim against the City of Lowell for failure to train in connection with an officer's allegedly excessive use of pepper spray and failure to provide subsequent medical treatment.

> According to the complaint, from 2005 through mid–2012, citizens filed more than forty internal affairs complaints and several civil rights lawsuits alleging excessive force by Lowell police officers. None of those matters led the City to discipline an officer. In multiple instances, complainants were sprayed with pepper spray or were denied medical treatment. The specific incidents are outlined in the complaint at some length.

Bochart, 989 F. Supp. 2d 151, 153 (2013). Furthermore, two of the incidents involving both excessive force with pepper spray as well as denial of medical treatment were "alleged to have occurred within two months of the events at issue here." Id. The court concluded that the plaintiff alleged a "pattern of conduct" for which the city "failed to take appropriate action." Id. at 155.

In Haley v. City of Boston, the First Circuit denied the City's motion to dismiss the Monell claim because it found there was both a pattern of similar violations as well as an indication in the underlying conduct that a policy or custom was at play. Specifically, the plaintiff had alleged that in the 1970s Boston police officers intentionally withheld exculpatory

evidence prior to his criminal trial in which he was convicted of murder, which was later reversed. Haley, 657 F.3d at 44-45. Despite the plaintiff's relatively conclusory allegations of the policy or custom, the First Circuit held that his complaint survived the City's motion to dismiss, but making clear that it did "not reach this conclusion lightly." Id. The First Circuit explained:

> Disclosure abuses are a recurring problem in criminal cases, see United States v. Osorio, 929 F.2d 753, 755 (1st Cir.1991), and the BPD's failure to disclose the sisters' statements is wholly unexplained. Given the volume of cases involving nondisclosure of exculpatory information and the instant failure to disclose statements that clearly would have undermined the prosecution's theory of the case, we think that the municipal liability claims pleaded by Haley step past the line of possibility into the realm of plausibility. See Iqbal, 129 S.Ct. at 1949–50. Indeed, if the detectives intentionally suppressed the discoverable statements even when such activity was condemned by the courts (as Haley has alleged), it seems entirely plausible that their conduct was encouraged, or at least tolerated, by the BPD.

Haley, 657 F.3d at 53. The First Circuit further noted that it took into consideration the fact that the plaintiff filed his complaint prior to the heightened pleading standard articulated in Iqbal, and that even with this consideration, "the 'plausibility' question [was] close." Id. at 53.

   i.   *Mistaken Entry*

Here, by contrast, the incorrect entry is not alleged to have been intentional or somehow beneficial to the officers, or to have been part of a "pattern of conduct." See Bochart, 989 F. Supp. 2d at 153; Haley, 657 F.3d at 53. Rather, the Complaint describes an isolated and inadvertent error while executing a search warrant, the validity of which is unchallenged, that did not lead to any charges, arrests, or the discovery of evidence (and in fact, it may have given the occupants of Apartment 139 an opportunity to destroy evidence, to the detriment of the officers). What is more, Plaintiffs have not identified any other instances of officers mistakenly executing a warrant at an address different than the one listed on the warrant. Plaintiffs point only to an

incident that happened 25 years ago that involved facts distinguishable from the facts alleged here.  In the case of Reverend Williams, the officers entered the address listed on the warrant.  It was the warrant itself—not its execution—that was faulty due to incorrect information provided by a confidential informant.  The issue there turned on the officers' reliance on information received from a questionable informant—not, as is the case here, on the officers' ability to execute a search warrant at the address listed on the warrant.  Other than the incident described in Plaintiffs' Amended Complaint, Plaintiffs have not pointed to a single other instance in which Boston police officers have entered an apartment that was not identified on the search warrant.  It follows that that the City would not know, or have reason to know, that its policies regarding the execution of search warrants was constitutionally inadequate.  See Gray, 917 F.3d at 14.   As recognized by the Supreme Court, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  Harris, 489 U.S. at 391.  Such is the case here.  Plaintiffs' Amended Complaint alleges a mistake at worst.  Accordingly, the Monell claim based on the entry as against the City Defendants fails as a matter of law.

Plaintiffs also fail to show that the City "knew or had reason to believe that [its policy regarding verifying search-warrant locations] had unconstitutional effects" because, as an initial matter, it is questionable that even the incident at bar involved the deprivation of rights guaranteed under the Constitution.  Gray, 917 F.3d at 14.  The mistaken execution of a valid search warrant on the wrong premises does not automatically violate the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 396 (1989).  Rather, the validity of the execution depends on whether the officer's failure to realize the mistake was objectively understandable and reasonable.  See Maryland v. Garrison, 480 U.S. 79, 88 (1987).  Police officers are given "some

latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." Id. at 87.

Moreover, BPD's policy on executing search warrants shows quite the opposite of "deliberate indifference" with regard to ensuring entries at correct addresses. BPD Rule 334 requires a detailed pre-search briefing with the affiant officer and the entire search and entry teams, including a description of the target location, and specifically designates a particular individual to be responsible in cases of multi-unit structures for directing the entry team to the correct unit. (See Exhibit C, § 3.) Municipal liability cannot be premised on a policy's failure to "remind" officers to use common sense and execute a warrant at the right address, or on requiring an officer to point out the correct unit in a particular manner. "[T]he fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing [of deliberate indifference]." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 27 (1st Cir. 2005).

Because the allegations in Plaintiffs' Amended Complaint only serve to underscore that this was an isolated incident that was not linked to a deficiency in the City's training or policies, the mistaken entry cannot give rise to municipal liability.

      *ii.*    *Excessive Force*

Plaintiffs' Monell claims against the City Defendants with regard to the amount of force used fail because the Defendant Officers, broadly speaking, are alleged to have used appropriate levels of force based on the intended target, and because the City's policies and training are fully in compliance with the law. There is no dispute here that the Defendant Officers had a valid, no-knock warrant for a suspected fentanyl dealer likely to be armed and that further applied to any and all other individuals found to be present in the dwelling. (See Exhibit A.) See Richards v.

Wisconsin, 520 U.S. 385, 394 (1997) (holding that "no-knock" entries are permissible when officers "have a reasonable suspicion that knocking and announcing their presence … would be dangerous or futile, or that it would … allow[] the destruction of evidence"). Plaintiffs appear to claim that even with such a warrant the Defendant Officers should have stopped the search before securing the premises simply because the first individuals they encountered did not match the name or appearance of the target, because the individuals complied with instructions, and/or because children were present. (ECF 20, ¶¶ 34 and 43.) However, the law is quite to the contrary: officers "possess[] authority to secure the premises before deciding whether to continue with the search" even when they encounter individuals inside a dwelling who appear not to be the intended targets and/or who are not resisting, and to detain occupants pending the initial sweep. Los Angeles Cty., California v. Rettele, 550 U.S. 609, 613 (2007); Michigan v. Summers, 452 U.S. 692, 705 (1981). Indeed, the presence of multiple occupants heightens the government's interest in securing a scene before further evaluation, for the safety of all those involved. Muehler v. Mena, 544 U.S. 93, 100 (2005).

Plaintiffs here do not dispute that they lived next-door to the target of a valid, no-knock warrant where drug-selling paraphernalia was found; they simply claim that officers made a mistake and went into the wrong door. Plaintiffs claim that in any building where children might be present, i.e. essentially any multi-unit dwelling, officers should not use SWAT teams, and that the City Defendants should now be liable for these practices. (See ECF 20, ¶¶ 34-36 and 43-44.) But such is not the law, and Plaintiffs have not identified any other problems with City policies or training that led to the allegedly excessive force.

For all of these reasons, Count II must be dismissed as against the City Defendants.

C. Count III – There is No Municipal Liability for MCRA Claims.

Count III as against the City Defendants must be dismissed because there is no available mechanism for imposing municipal liability for MCRA violations. (See ECF 20, ¶ 48.) The MCRA provides a cause of action where a

> person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth . . . .

Mass. Gen. Laws ch. 12, §§ 11H and 11I. The Massachusetts Appeals Court has held that "a municipality is not a 'person' covered by the Massachusetts Civil Rights Act (MCRA), G.L. c. 12, §§ 11H, 11I," and that this holding applies equally to "individual defendants in their official capacities." Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591–93, 747 N.E.2d 729, 744-45 (2001). The MCRA further does not impose liability on municipalities based on the actions of individual employees acting in the scope of their employment. See Chaabouni v. City of Bos., 133 F. Supp. 2d 93, 103 (D. Mass. 2001) (declining "to impose the theory of *respondeat superior* on municipalities" under the MCRA); Sarvis v. Bos. Safe Deposit & Tr. Co., 47 Mass. App. Ct. 86, 96, 711 N.E.2d 911, 920 (1999) ("'[I]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof.'" (quoting Hansen v. Commonwealth, 344 Mass. 214, 219, 181 N.E.2d 843 (1962)). Accordingly, Count III as against the City Defendants must be dismissed.

D. Count IV – Plaintiffs' Public-Records Claim is Moot

As Plaintiffs acknowledge, on or about April 25, 2019, the City responded to all of Plaintiffs' records requests, including records related to BPD policies, officer training, and the

search-warrant records at issue in this case.[6]  (Exhibit D and Exhibit E; ECF 20, ¶¶ 30-31.)  Plaintiffs claim that the City's response was late[7] and deficient because the City did not produce 1) camera footage of the incident; or 2) records pertaining to the incident involving Reverend Williams.  (ECF 20, ¶ 51.)  The City's response was not deficient.  The City did not produce records pertaining to Reverend Williams because none of Plaintiffs' requests covered such records.  Even if the incident could be considered to have involved an "incorrect address," it happened in 1994 and Plaintiffs only requested incident records from the last 24 months.  The City did not produce camera footage of the incident because, at the time of its public records response, the City was not aware of any camera footage of the incident.[8]  (See Exhibit A, Exhibit D, and Exhibit E.)  See Mass. Gen. Laws ch. 66, § 10.  To the extent Plaintiffs wish to delve into other records outside the scope of their requests, such requests relate to their personal claims in this case and may be best addressed in discovery.  Accordingly, Count IV should be dismissed as moot.

## V. CONCLUSION

For the foregoing reasons, Defendants City of Boston and William Gross respectfully requests that Count II, Count III, and Count IV of the Amended Complaint be DISMSSED.

---

[6] Additionally, although Plaintiffs neglect to include any allegations regarding correspondence surrounding their requests in the Amended Complaint, the City promptly responded to Plaintiffs after receiving their requests and stayed in communication with them while compiling responsive records.

[7] One of Plaintiffs' requests was for a subset of police records that clearly could not be quickly segregated or identified, specifically:  "Any and all public records revealing on how many occasions in the past 24 months the Department has executed a warrant without knocking and it was later determined that the officers involved went to or into an incorrect address."  (Exhibit B, request no. 4.)

[8] The City is still not aware of any camera footage of the incident.  To the extent camera footage exists, it will be produced in discovery.

|  |  |
|---|---|
| | Respectfully submitted, |
| **CERTIFICATE OF SERVICE** | DEFENDANTS WILLIAM GROSS AND CITY OF BOSTON, |
| I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants. | By their attorney,<br><br>Eugene O'Flaherty,<br>Corporation Counsel |
| | /s/ Lena-Kate K. Ahern |
| 6/6/19   /s/ Lena-Kate K. Ahern<br>Date         Lena-Kate K. Ahern | Nicole M. O'Connor (BBO#675535)<br>Senior Assistant Corporation Counsel<br>Lena-Kate K. Ahern (BBO#688331)<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>City Hall, Room 615<br>Boston, MA 02201<br>(617) 635-4039 (O'Connor)<br>(617) 635-4051 (Ahern)<br>Nicole.OConnor@boston.gov<br>Lena-Kate.Ahern@boston.gov |