UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEAN REGIS and VERLANDE REGIS, *<br>*On their own behalf and on behalf of their*<br>*minor children, M, J, and H,* <br>      Plaintiffs,<br><br>      v.<br><br>CITY OF BOSTON, WILLIAM GROSS,<br>WILLIAM FEENEY, JOHN DOES 1-10,<br>MATTHEW PIEROWAY,<br><br>      Defendants. | Civil Action No. 19-cv-10527-IT |

MEMORANDUM & ORDER

June 1, 2020

TALWANI, D.J.

Following the Boston Police Department's ("BPD") mistaken no-knock raid of their home, Plaintiffs Jean and Verlande Regis, on their own behalf and on behalf of their minor children, M, J, and H, sued the City of Boston (the "City") and BPD Commissioner William Gross (collectively the "City Defendants") and several of the officers involved in the raid. Plaintiffs allege violations of rights arising under both federal and state law. Before the court is the City Defendants' Motion to Dismiss [#23] counts II, III, and IV of Plaintiffs' Amended Complaint [#20] ("Complaint") and Plaintiffs' Motion to Amend the Complaint [#41] to name the officers previously identified as John Does. For the reasons set forth below, the City Defendants' Motion to Dismiss is DENIED as to Counts II and IV and DENIED WITHOUT PREJUDICE as to Count III, and Plaintiffs' Motion to Amend is GRANTED.

1

I. FACTUAL BACKGROUND AS ALLEGED IN THE COMPLAINT

At approximately 4:30 a.m. on November 27, 2018, approximately 10-12 officers with the Drug Control Unit of the BPD executed a "no-knock" raid of the Regis's home. Am. Compl. ¶¶ 10, 11, 13 [#20]. Although the officers possessed a warrant to execute a raid, the warrant was issued for an adjoining apartment, not the Regis's. Id. ¶ 26. The officers used a battering ram to forcibly enter the Regis's home without first knocking or otherwise announcing their presence. Id. ¶ 1. The officers forcibly entered the Regis's home in spite of the fact that their front door was conspicuously marked with their apartment number, which differed from the apartment number listed on the warrant. Id. ¶ 26.

Once inside, the officers first encountered Verlande Regis after she leapt from her bed upon hearing the sound of the door being broken down. Id. ¶ 14. The officers pointed their weapons at Verlande Regis, pushed her to the ground, and handcuffed her. Id. While she was laying on the floor, several officers stepped on her and injured her hand. Id. The officers then encountered Jean Regis as he lay in bed. Id. ¶ 15. An officer pointed his weapon at Jean Regis, ordered him out of bed, and handcuffed him with his arms behind his back. Id. Because the Regis's four- and five-year-old children had been sleeping inside their parents' bedroom, the children witnessed their parents being restrained and handcuffed. Id. ¶ 19.

The officers also encountered the Regis's 15-year-old daughter, M. Id. ¶ 17. When M attempted to open her bedroom door, she was shoved back into her room by an officer's shield. An officer also aimed his weapon at M, ordered her to the floor, and handcuffed her with her arms behind her back. Id. ¶ 18.

Although none of the Regis family members matched the description of the intended target set forth in the search warrant, and none of the occupants resisted during the officers' intrusion into their home, the officers kept Jean Regis, Verlande Regis, and M handcuffed and

lying on the floor for approximately 20 minutes. Id. ¶¶ 19, 27. One of the officers then told the family and the other officers that they had entered the wrong apartment. Id. ¶ 22. Plaintiffs state that they have suffered and continue to suffer harm as a result of this incident. Id. ¶ 29.

On December 27, 2018, Plaintiffs sent a public records request to the City of Boston's Police Department in order to acquire records showing trainings and established practices for police officers regarding the execution of no-knock warrants. Id. ¶ 30. When Plaintiffs did not receive a response within ten business days, as required by Mass. Gen. Laws. ch. 66, § 10, counsel for plaintiffs filed an appeal to the Supervisor of Public Records within the Secretary of the Commonwealth's office. Id. The Supervisor of Records issued a ruling on February 22, 2019, stating that the City had failed to comply with the public records law and ordering that a response be provided within another ten business days. Id. ¶ 30. Plaintiffs allege that there was still an unreasonable delay after the ruling—arguing that the City produced some of the requested documents only after Plaintiffs filed this present action. Id. ¶ 31.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint [#1] on March 20, 2019. In response, Defendants Matthew Pieroway and William Feeney filed Answers [#14], [#15], and the City Defendants filed a Motion to Dismiss Counts II, III, and IV [#16] pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs promptly filed an Amended Complaint [#20]. Defendants Peiroway and Feeney again filed Answers [#21], [#22]. The City Defendants renewed their Motion to Dismiss Counts II, III, and IV [#23], and Plaintiffs have filed their Opposition [#28].

Plaintiffs subsequently filed a Motion to Amend the Complaint [#41] seeking to name the officers previously identified as John Does. The City of Boston has filed an Opposition [#43] to the motion and Plaintiffs have filed a Reply [#47].

### III. THE CITY DEFENDANTS' MOTION TO DISMISS

#### a. Standard of Review

To survive a motion to dismiss, the well-pleaded facts in a plaintiff's complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The First Circuit has explained that a court "must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)" in reviewing a complaint under a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (internal citations and quotations omitted). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

#### b. Count II – 42 U.S.C. § 1983 Against City Defendants

As a general matter, a city cannot be held vicariously liable under a § 1983 claim for their employee's actions. Connick v. Thompson, 563 U.S. 51, 60 (2011) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978)). However, a city may be held liable under § 1983 for its own illegal acts. Id. (citing Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). To do so, a plaintiff must show that a city's "policy or custom is responsible for causing the constitutional violation or injury." Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002) (citing Monell, 436 U.S. at 690–91)).

Liability for a city's "policy or custom" may, under "limited circumstances," extend to a city's failure to properly train employees. Connick, 563 U.S. at 61. For a city to be liable under a "failure to train" theory of liability, the city's failure must reach a level of "deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. at 61 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). To prove deliberate indifference, a plaintiff

4

must show that "a municipal actor disregarded a known or obvious consequence of his action" and that there was a "a direct causal link" between the municipality's conduct (or lack thereof) and the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997). In order to avoid failure-to-train claims from devolving into a de facto vicarious liability standard, a plaintiffs must show either a "pattern of similar constitutional violations" or "that need for more or different training is so obvious and the inadequacy is so likely to result in the violation of constitutional rights." Hill v. Walsh, 884 F.3d 16, 24 (1st Cir. 2018) (citing Bd. of Cty. Comm'rs, 520 U.S. at 409; City of Canton, 489 U.S. at 390).

    Here, Plaintiffs make a number of allegations as to why the City Defendants are liable under § 1983 for both the City Defendants' policies and customs and for their failure to train its employees. Specifically, they allege the City Defendants have a policy that the warrant affiant is not to be present where and when the BPD deploys "SWAT" teams to execute a no-knock raid, Am. Compl. ¶ 33 [#20]; an absence of a city policy requiring officers to check the names of individuals on a warrant with the names of individuals residing in a unit that is being raided before executing the raid, id. ¶ 34; an absence of a city policy requiring officers conducting a raid to double check the property address against the warrant address before executing the raid, id.; an absence of a policy requiring officers conducing the raid to survey the home the day before the raid so as to ensure that the activity in the home is consistent with that described in the warrant, id.; an absence of a policy requiring officers to immediately compare the names and described features of those individuals named in the warrant with those encountered in the property being raided, id.; and, a failure to train officers on how to interact with children encountered in a home that is being raided, id. ¶ 35.

    Plaintiffs Amended Complaint [#20] sets forth short and plain statements of the claim for which they are seeking relief, and these statements are sufficient to provide the City Defendants

with notice as to the basis for the claims. The City Defendants do not dispute this. Nevertheless, the City Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The City Defendants argue that the complaint only describes an "isolated incident" and that the City's existing policies on executing no-knock raids, which the City attaches to its opposition, show "quite the opposite of 'deliberate indifference' with regard to ensuring entries at correct addresses." Defs.' Mem. 11 [#24]. Maybe so, but these arguments go to the merits of Plaintiff's claims that there is a direct causal link between the City's policies and the alleged violation of the Regis's family's rights and that the City was deliberately indifferent to how their failure to train its officers caused the alleged violations under the federal Constitution.[1] They do not undermine the sufficiency of the pleadings.[2]

    *c. Count III – Massachusetts Civil Rights Act Against City Defendants*

City Defendants argue that they may not be held liable under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and 11I, since "there is no available

---

[1] City Defendants briefly raise the argument that the Amended Complaint fails to even raise a constitutional injury since it is questionable that even the incident at bar involved the deprivation of rights guaranteed under the Constitution." Defs.' Mem. 10 [#24]. This argument is troubling. "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511 (1961). Defendants argue that the Regis's right to be secure in their own home gave way to an officer's "objectively understandable and reasonable" mistake. Defs.' Mem. 10 [#24] (citing Maryland v. Garrison, 480 U.S. 79, 88 (1987)). It is difficult to understand how the allegations set forth in the complaint describe a mistake that was either objectively understandable or reasonable.

[2] This is not to say that every allegation of a constitutionally infirm policy or custom should survive a challenge under Fed. R. Civ. P. 12(b)(6). "[A] municipality can be held liable only if a policy or custom actually exists, and should not be forced to expend its limited resources conducting discovery in every case where a plaintiff makes a bare allegation of a "policy or custom." Bochart v. City of Lowell, 989 F. Supp. 2d 151, 155 (D. Mass. 2013). But here there is no bare allegation. The uncontested events that give rise to the complaint—that the City raided the wrong home in the middle of the night—give plausibility to the allegation that the city's policies regarding no-knock raids and their failure to properly train their employees frustrates the rights secured to the Regis Family and others under the federal Constitution.

mechanism for imposing municipal liability for MCRA violations." Defs.' Mem. 13 [#24]. Defendants, in the course of a single paragraph, cite several cases from the Massachusetts Appeals Court and from this district for the proposition that, as a matter of law, the MCRA does not extend liability to municipalities directly or vicariously. Id.

The City Defendants' portrayal of municipality liability under the MCRA as an open and shut issue is not accurate. Although the cases cited by the City Defendants are to be accorded "some weight," this court is "duty-bound to accept controlling state law as set forth by . . . the SJC." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 54–55 (1st Cir. 2008); GGNSC Admin. Servs., LLC v. Schrader, 958 F.3d 93, 95 (1st Cir. 2020). On this issue, the SJC considers the question unresolved. In Swanset Dev. Corp. v. City of Taunton, the SJC transferred that case to itself "principally to consider whether a municipality should be considered a 'person' for purposes of liability under the [MCRA]" but did not address the question because it had not been adequately briefed. 423 Mass. 390, 391 (1996). More recently, in Am. Lithuanian Naturalization Club v. Bd. of Health of Athol, the SJC cited Swanset Dev. Corp. for the proposition that "it is not resolved whether the Civil Rights Act applies to municipalities." 446 Mass. 310, 325-26 (2006). Since City Defendants' Motion to Dismiss Count III is based entirely on the mistaken presumption that there is controlling law that the MCRA does not apply to municipalities, the motion is denied without prejudice.

### d. *Count IV – Public Records Claim Against City of Boston*

Plaintiffs allege that the City violated the Massachusetts Public Records Law, Mass. Gen. Laws ch. 66, § 10, by not providing all records that were properly requested and / or by providing some records only after the Regis family sued the city under the Public Records Law. Am. Compl. ¶ 51 [#20]. The City moves to dismiss the claim on the basis that it is "moot" since, according to the City, the City's production was not deficient. Defs.' Mem. 14. [#24]. The City's

Motion to Dismiss the claim does not address the timeliness of their response other than to state, in a footnote, that one of the records was "for a subset of police records that clearly could not be quickly segregated or identified." Id. at 14 n.7.

As an initial matter, the City disagrees about the sufficiency of its production. It is elementary that the court cannot resolve this disagreement on a Fed. R. Civ. P. 12(b)(6) motion without converting it to a motion for summary judgment. Even beyond the sufficiency of the production, Plaintiffs' claim that the production was untimely remains unresolved. Massachusetts Law provides that a requestor may be entitled to attorney fees and costs "in any case in which the requestor obtains relief through . . . the provision of requested documents after the filing of a complaint." Mass. Gen. Laws ch. 66 § 10A(d)(2). Accordingly, even if Plaintiffs are wrong regarding the sufficiency of the most recent production, Plaintiffs' claim that the city failed to comply with the Massachusetts Public Records Law has not been mooted.

## IV. PLAINTIFFS' MOTION TO AMEND

Also before the court is Plaintiffs' Motion to Amend the Complaint [#41] so as to replace fictitious "John Doe" names with the actual names of the BPD police officers involved in the raid now that those names have been revealed through discovery. Plaintiffs' motion is timely under the Scheduling Order [#35] issued by the court. Accordingly, Plaintiff's motion is considered under Fed. R. Civ. P. 15(a)(2), which directs that the court "freely give" leave to amend where the interests of justice so require. City Defendants nonetheless object to Plaintiffs' request to amend the complaint on the basis that the proposed amendments are futile, since the named officers would enjoy qualified immunity for the alleged conduct. Defs.' Opp'n [#43]. Plaintiffs' counsel has represented that these concerns were not raised by the City Defendants in the Local Rule 7.1(a)(2) conference that occurred before the motion for leave to amend was filed. See Pls.' Mem. 1 [#45]. Furthermore, the objections raised by the City Defendants do not present any argument

8

as to how granting leave would prejudice or otherwise harm them. If the court were to consider this argument and rule against the City Defendants, the officers would still have the right to relitigate the issue. Accordingly, the timely motion to amend is allowed and the court will address the qualified immunity argument in the first instance if raised by the Defendant officers themselves.

V. CONCLUSION

For the reasons set forth above, City Defendants' Motion to Dismiss [#23] is DENIED as to Counts II and IV and DENIED WITHOUT PREJUDICE as to Count III and Plaintiffs' Motion to Amend [#41] is GRANTED. Plaintiffs shall promptly file their second amended complaint. Within twenty-one days of the filing of the second amended complaint, the City Defendants shall file an answer as to Counts II and IV and may file an answer or a motion to dismiss as to Count III.

Upon the filing of the second amended complaint, the clerk shall issue summonses as to the newly added Defendants.

IT IS SO ORDERED.

Date: June 1, 2020

/s/ Indira Talwani
United States District Judge